*323 Statement of the Case.
NICHOLLS, J.
Plaintiffs alleged that they were the owners in the proportion of one undivided half each of a certain described tract of land situated principally in the parish of Iberia and partly in the parish of St. Mary, together with a right of way or servitude and of passage from their said lands across the Cypremort plantation' as the same was located; that they acquired title to said property and servitude by purchase from the succession of William F. Weeks and Mrs. Hall and Miss Weeks, and these two by inheritance of their mother Mary G. Weeks (his wife), both deceased, at public sale made in the suit of John Sealy v. G. L. Hall, administrator of said estate, and Mrs. Lily Weeks Hall and Miss Harriet Weeks, on the 7th of September, 1896, duly recorded in conveyance record No. 31, p. 269, of the recorder’s office of the parish of St. Mary; that the two petitioners, Mrs. Lily Weeks Hall and Miss Harriet Weeks, were the sole surviving issue and heirs of said William P. Weeks and his wife, Mary G. Weeks, who were the owners at the time of their death of said property ; that the J. M. Burguieres Company, Limited, had trespassed and was trespassing upon all of said lands and servitude, and especially upon section 45 aforesaid, and was then and had been for the last nine years illegally occupying about 50 acres of said land and cultivating same, and that said company owed petitioners the rents, and revenues thereof which were fully worth $10 per acre per annum'; that said corporation then was and had been continuously in bad faith and without any right to said occupancy or any title whatever; that the aforesaid land and servitude were worth fully $30,000. In view of the premises they prayed that the said J. M. Burguieres Company, Limited, be cited, and that there be judgment in favor of petitioners and against said company recognizing petitioners to be true and lawful owners of said servitude, and for a judgment against said corporation for the sum of $4,500, with legal interest thereon from judicial demand for the fruits and revenues aforesaid.
Defendant excepted that plaintiffs’ petition was vague and indefinite and not sufficiently specific to make it answer. It prayed that this exception be maintained and plaintiffs’ suit be dismissed. The exception was overruled. Subsequently, defendant appeared, and alleging that it was necessary for it to have a view of the public act executed by the sheriff of the parish of Iberia, also certain acts by which the property was described, prayed that plaintiffs be ordered to produce and file in court the deeds declared upon in plaintiffs’ petition as well as the deeds by which certain of the plaintiffs claimed that the property belonged to the ancestor of said plaintiffs. Oyer was granted and the document ordered to be filed — was filed in compliance therewith. Defendant then moved that plaintiffs elect, and filed a plea of misjoinder. Defendant filed an exception to the jurisdiction of the court. The motion to elect the plea of misjoinder and the exception to the jurisdiction were all overruled. The defendant, under reservations of his exceptions, answered, first pleading a general denial; further answering, it admitted that it claimed the ownership of a certain portion of section 44, ando also of section 45, which defendant purchased at succession sale from 'the estate of Jules M. Burguieres, deceased, on the 18th of March, 1909, and which the said Jules M. Burguieres acquired from William F. Weeks, by notarial act passed before Jos. A. Breaux, notary public, on the 31st of May, 1877, and with reference to said sale by Wm. F. Weeks to Jules M. Burguieres, defendant alleged the following:
That before the sale was finally consummated the parties thereto secured the services • of a surveyor, and had .all the lands which were intended to be conveyed by the sale surT *325 veyed, and the lines properly run. That the said Weeks and the said Burguieres were each well aware of the location of the said lines, and when the deed was passed, the said Weeks turned over to and placed the said Burguieres in possession under said deed of all the lands embraced within the lines as run by the said surveyor. That in section 45 there was located what is known as “Week’s Canal” running through the said section from the Cypremort plantation towards Grand Cote Island, and that in making said sale the said Weeks made a certain reservation of lánd on each side of the canal which reservation was described as follows:
“The said tracts have been surveyed by Thos. II. Weightman, surveyor, and the canal hereinafter referred to has been by him correctly located, also the reservations made by vendor. * * * Vendor reserves seven acres front above the canal running between Grand Cote and Cypremort plantations, and the depth running the entire length of the canal. On the lower side of the canal the said vendor reserves seven acres in front on a depth of the entire length of the canal, less two acres in depth, commencing at the cypress timber. The canal and reservation were located as above mentioned, and the map showing the said location is hereto annexed. The same wms made by Mr. Weightman,- the surveyor.”
Defendant averred that the remainder of section 45 which was not embraced within the reservation, and the whole of section 44 which was not embraced within said reservation, belonged to your defendant; that at the time this sale was made, that portion of section 45 which was in cultivation had located upon it a sawmill, which was taken possession of by Jules M. Burguieres, under the sale, as part of the property conveyed, to the full knowledge of the said Wm. F. Weeks, the said new sawmill being located upon the property embraced within the lines of said survey, and which were fully understood and recognized by the said Weeks; that the said Weeks retained possession of the property which had been reserved in said deed, cutting wood and timber upon it, but always recognized the remainder of sections 44 and 45 as the property of Jules M. Burguieres, to the full knowledge of the plaintiffs in this case; that the said William F. Weeks, having sold the property to the said Jules M. Burguieres, and having put him in the actual possession of all the property which was surveyed according to the survey set forth in the deed, and having constantly recognized the title and possession of defendant and its vendor to all of said property, and having constantly recognized the lines of division separating the properties, the said Wm. F.-Weeks and his heirs and assigns were estopped from'asserting any ownership to any portion of the property not embraced within the said reservation, or asserting title to any portion of the property embraced within the survey and lines which were marked out and designated at the instance of vendor and vendee, and recognized by each as the correct lines separating the properties.
Defendant averred that it and those under whom it held had been in the actual, peaceable, continuous, and undisputed possession of the said property from the date of the sale, to wit, the 21st of May, 1877, to the present time, and had always been recognized as owners by the said Wm. F. Weeks, his heirs and assigns.
That one of the plaintiffs herein, Gilbert L. Hall, had no right, title or interest, claim or demand upon the property herein, as would be shown by the deed upon which he relies; that the other plaintiffs named had only such interest as they would inherit from their ancestor, and, their ancestor having conveyed the property and given a good and sufficient title thereto, they were not estopped from ascertaining any right of ownership of the said Wm. F. Weeks.
That the heirs of the said Wm. F. Weeks were the plaintiffs herein, to wit, Lily Weeks Hall and Miss Harriet Weeks; that they were bound in warranty to defendant for the property which they were seeking to recover *327 and the acts in pais, the recognition of title and fixing of boundaries by the ancestor es-topped the heirs and they could not be heard in this court to assert the contrary.
In view of the premises, defendant prayed that the demand of the plaintiffs be rejected at their costs, and that it be quieted in its title and possession of the said property and for all general and equitable relief.
On plaintiffs suggesting the necessity of a survey, said survey was -ordered, and the surveyor, appointed by the court, directed to make due return thereof. Plaintiffs by leave of court filed an amended and supplemental petition in which reiterating the allegations of their original petition, they averred that sections 44 and 45 and the portion of section 32 claimed by them in this suit were adjacent to one another, and form parts of one and the same tract owned by petitioners, and that said entire tract was partly in Iberia and partly in St. Mary parishes, La., but principally in the said parish of Iberia. In view of the premises, they prayed that this their amended and supplemental petition be allowed, and that service thereof be duly made upon defendants, and, further, they prayed as in their original and supplemental petitions in this cause and for general relief.
Defendant with leave of court filed an amended answer. It amended its original answer in the eleventh line of the second page, inserting after the words “section 44” the words “township 12 South, range 7 East,” so as to make said paragraph as amended read as follows:
“Defendant shows that the remainder of section 45 which is not embraced within the reservation and the whole of section 44, township 14 South, of range 7 East, which is not embraced within said reservation belong to your defendant.”
Defendant, without in any manner changing the character or substance of its original demand, desired to amend its- answer so as to aver further as follows:
“It avers that the original deed by which the property was conveyed to J. M. Burguieres. together with the map attached thereto, had been lost or destroyed, and it was doubtful if a correct copy of said deed was in existence, and there was no copy of the said map in existence .to the knowledge of the defendant. That the map showed that the southeast end of section 45,'township 14 South, of range 7 East, was situated wholly within the parish of St. Mary, and showed that almost all of section 45 that was situated in the parish of St. Mary, as shown upon the map, was and' was part of the land conveyed as the Cypremort plantation to the said J. M. Burguieres, and that if the original deed which had been lost or destroyed failed to mention section 45, or a portion thereof, as being embraced in the said deed, same was erroneous and should be corrected, although in the opinion of defendant said error was corrected by the map itself and the other calls of the said title.
“Defendant further averred that the said map attached to said deed showed the location of the lines as they had actually been run by the surveyor and been agreed upon by the vendor and vendee; that the survey thus made and the map showing the same would control the deed if the said deed contained expressions in the descriptions inconsistent therewith.
“It averred that plaintiffs had caused a survey to be made of a certain reservation in pursuance of an order prepared by the said plaintiffs, and the said surveyor had struck stakes in the field of your defendant, indicating that they were claiming said land by virtue of the said reservation in said deed; that said reservation was located and its location fixed by the surveyor then making the survey and agreed upon by the vendor and vendee; that said lines were located, the one at or near the edge of the cypress timber, the other line on the opposite side of the canal, two acres further towards the Cypremort plantation, which were several acres from the cleared land of the plantation and were run so as to embrace all the land that was high enough to be cultivated, and the lines were not run, nor was it intended that they should run, so as to reserve any portion of the Cypremort plantation, then in cultivation, or any land adjoining thereto that could be cultivated.
“That the sole object of the reservation was to provide wood for the sugar house on- Weeks Island plantation then owned by vendor, and any expression in the deed which may be construed to extend the reservation up and into high land of defendant was error and should be corrected. Said expression, if such existed in said deed, was controlled by the actual location of the lines by the parties, and defendant averred that same would have been explained and made clear by the map referred to in said deed, which, together with the original deed, had been lost, mislaid, or destroyed as aforesaid. It further averred that the sale to the author of the defendant herein was one per aversionem, *329 so declared in said contract of sale, and that all the lands belonging to Cypremort plantation were conveyed by said transfer, and the property claimed was and is part of said plantation.
“And now assuming the position of plaintiffs in reconvention, defendant averred that acting-in good faith under recorded title and possession, it had cleared, ditched, and put in a state of cultivation several acres, the exact number of which would be shown on the trial, which labor in thus clearing, ditching, and putting the land in cultivation was well worth the sum of fifty ($50) dollars per acre, which amount per acre your defendant was entitled to recover, in reconvention for each and every acre shown to bo thus improved in the event there was a judgment against your defendant for any part of the cleared land. Now, adopting all and singular the allegations and prayer of its original answer, defendant prayed that this, its amended answer, be filed and allowed, and that the demand of plaintiffs be rejected at their costs.
“It further prayed that in the event that the court award a judgment in favor of the plaintiffs for any part of the lands, that it (defendant) or its author had cleared, ditched, or pu-t in cultivation, then that it have judgment in reconvention against said plaintiff for the value of thus improving land in the sum of fifty dollars ($50) per acre for each and every acre thus put in cultivation, and that defendant retain the possession of the said land until said judgment is paid. And for general relief.
“Defendant filed a plea of estoppel averring that, in the year 1902, the Myles Salt Company, of which Gilbert L. Hall at that time was a director, and the other plaintiffs, Mrs. Hall and Miss Harriet Weeks; were stockholders of the said Myles Salt Company, with the full knowledge, consent, and acquiescence of the plaintiffs herein, negotiated with defendant for the purpose of purchasing from it the right of way extending from the terminus of the Cypremort branch to the dividing line separating the properties of plaintiffs and defendant.
“That failing to purchase its right of way from your defendants they caused a survey to be made by the civil engineer of the Morgan’s Louisiana & Texas Railroad & Steamship Company, for the purpose of having same expropriated by said company; that they induced said company to file expropriation proceedings, with the understanding that the Myles Salt Company, of which the said Gilbert L. I-Iall was a director, and agreeing thereto that they would pay for the right of way and the grading on condition that the railroad company itself would place the steel upon the road, and operate trains thereon, and in pursuance of this agreement the said railroad company instituted legal proceedings to expropriate said right of way, and attached to its petition a map showing the location of the right of way, and showing the dividing line between your plaintiffs’ and defendant’s property, and which was exhibited at the trial of said cause to the full knowledge of plaintiffs, and your defendant’s property was actually expropriated up to the line indicated by the said map and was paid for by the said Myles Salt Company as aforesaid. They further showed that W. E. Weeks at all times acknowledged the ownership of the land in controversy as being in your, defendant and its author, and the present plaintiffs, and his heirs also make like recognition of defendant’s title. Defendant now shows that the said parties, plaintiffs herein and their authors and ancestors, having acknowledged title in your defendant and its authors, having treated with your defendant and caused such proceedings as aforesaid to be instituted, and having paid for the said right of way, they thereby acknowledge defendant’s title, and they were now estopped from asserting or claiming that your defendant did not own the property up to the line indicated upon the said map-and up to the point to which the right of way was expropriated.
“This estoppel it now specially pleaded against the right of the said plaintiffs to recover. The premises considered, defendant prayed that this its plea of estoppel be maintained; that the demand of the plaintiffs be rejected at their costs, and further prayed as in its original answer, and for general relief.”
Defendant filed plea of prescription of 10 and 30 years in bar of plaintiffs’ action and in support of its own title. Pleas of estoppel and of prescription were referred to the merits. Defendant reserving the right to file answer to the amended and supplemental petition on the exception to the jurisdiction was overruled and the case taken up for trial on the merits.
On the 11th of November, 1908, the district court rendered judgment in favor of defendant and against plaintiffs ordering, adjudging, and decreeing that the demand of plaintiffs be rejected and their action be dismissed at their cost. It further ordered, adjudged, and decreed that the defendant be quieted in its possession of the property claimed by it in its answer. The plaintiffs were on motion granted a suspensive or a devolutive appeal on furnishing bond in the sum of $300 for either appeal.
The bond was. executed, and the case is now before the court on appeal.
Defendant filed in the Supreme Court the following intrument:
*331 “Now into this honorable court appears the defendant herein, the J. M. Burguieres Company, Limited, through undersigned counsel, and shows unto the court that in the argument of this case before the Supreme Court, it was contended by the plaintiffs that they should have judgment recognizing their ownership to the right of way through the seven-acre reservation down to Cypremort bayou. Your petitioner shows that this right of way has never been contested or disputed by the defendant; that the owners of Grand Cote Island have always enjoyed the right of way without any interference whatever on the part of defendant, and your defendant now files this its disclaimer of ever having in any manner interfered with the right of the owners of the Grand Cote Island to freely pass upon the right of way reserved in the sale from W. E. Weeks to J. M. Burguieres; and that it specially recognizes the right of the owners to use the said right of way.
“It specially declares that it now and at all times recognized the ownership of the plaintiffs to the seven-acre reservation on each side of the said canal, commencing on the upper side of the canal, at or near the first bridge and on the lower side of the canal at or near the second bridge, as is indicated upon the map filed in evidence marked ‘EE’ or ‘EE,’ as is also indicated upon the map filed in evidence marked ‘HH,’ known as the ‘Kemper map.’
“Defendant further declares that there was no intention whatever on the part of the trial judge to decree that the plaintiffs have not the ownership of this particular tract of land thus reserved, as will appear by his opinion filed in the record as the reasons for his judgment.
“Wherefore, it prays that this judicial disclaimer be filed and considered by the court.”
They further pray that the judgment of the lower court be affirmed.
The following were the reasons assigned by the district judge for his judgment:
“This is a petitory action for the recovery, in the proportion of one undivided third each of a certain tract of land situated in the parishes of Iberia and St. Mary, and known and designated as all of sections 44 and 45 in township 14 South, range 7 East, containing 66454/ioo acres, and a reserved portion of section 32 in same township and range, together with a right of servitude of passage over Cypremort plantation to Bayou Cypremort and for rents and revenues. They aver title to said property and servitude by purchase from the succession of William F. Weeks at public auction in the suit of John Sealy v. G. L. Hall, Administrator, et ais., and also by inheritance on the part of two of the plaintiffs, Mrs. Hall and Miss Weeks, from the succession of their mother, Mary G. Weeks, wife of William F. Weeks. The defendant answered, admitting that it purchased and claimed the ownership of the lands named, except a certain reserved portion in said sections 44 and 45, and that it and those under whom it holds were in possession of same, but otherwise denying all of plaintiffs’ allegations. It averred that it purchased said lands, save the reservation, at succession sale from the estate of Jules M1. Burguieres, deceased, on March 16, 1901, and that the said Jules M. Burguieres acquired same from William E. Weeks, on May 21, 1877. Defendant further shows that all the lands that were intended to be conveyed were surveyed and the lines drawn and the sale executed in accordance therewith; that these lines were well known to said William F. Weeks and J. M. Burguieres, and after the passage of the sale the vendee was placed in possession by the vendor of all the lands embraced within the lines as run by the surveyor in accordance with the deed. These are followed by other averments in line with said sale. The pleas of estoppel and prescription are also filed.
“The original act of sale of William F. Weeks to J. M. Burguieres, together with the surveyor’s map thereto attached, showing the exact location of the land surveyed and transferred, are missing from the clerk’s office in the parish of St. Mary, and now cannot be found. These have been supplied by ample secondary and parol evidence.
“The record discloses that the plaintiffs based their claims to the lands in question on a sheriff’s sale in the suit of Sealy v. Hall, Administrator of the Succession of Weeks, made September 7, 1896, claiming that these sections 44 and 45 and a portion of section 32 formed a part of ‘Grand Cote Island,’ and were the lands included and referred to in the description reading ‘the whole of that certain tract of land or sugar plantation known as the Grand Cote Island. situated in Iberia parish, together with all the adjacent wood and swamp lands.’
“There are no other titles in the record under which the plaintiffs could lay a claim to these lands. If they formed part of Grand Cote plantation and were the lands meant by the description ‘adjacent wood and swamp lands,’ then Mrs. Hall and Miss Weeks, two of the plaintiffs who are also claiming as heirs, have no claim to them in that capacity. That sale is their muniment of title, and, under the-facts presented, they cannot claim from any other source. Thereunder they must stand or fall.
“It is impossible to conceive how it could be advanced that these lands formed part of Grand Cote Island, and are the adjacent wood and swamp lands referred to in the deed, when the description is so vague and uncertain, and especially when the proof shows that there are other adjacent wood and swamp lands. It is more plausible to infer that it refers to the reservation mentioned in the sale from William F. Weeks to J. M. Burguieres of the seven acres of swamp on both sides of the canal running through said section 45, and situated between Grand Cote and Cypremort plantations, which belongs to Weeks’ estate at the time of the sale, or to such other swamps adjacent and *333 making part of the island, certainly not to sections 44 and 45 and a portion of section 32.
“The record shows that on the 3d of February, 1877, William F. Weeks executed a promise of sale to Jules M. Burguieres of Cypremort plantation and the swamp lands lying north of this plantation, but reserved seven acres of swamp land situated on each side of the canal running between Grand Cote Island and Cypremort plantation extending to its entire depth above and also below, less two acres below.
“This promise covers and includes these identical swamp lands in question, because there are no other swamps lying north of Cypremort and between it and Grand Cote Island. There are no other swamps in that section wherein there is a canal or canals, nor are there any other but the canal here mentioned and in question running between these two plantations and located in section 45.
“This promise of sale was carried out in full by Weeks, and on May 21, 1S77, he sold the lands therein mentioned to Jules M. Burguieres, but were more extensively described in the deed. These two sections 44 and 45 were sold as forming part of Cypremort plantation, as well as that portion of section 32, and was so intended by the contracting parties, because the sale calls for a plantation known as ‘Cypremort,’ and then follows a summarized description of the lands constituting same which had been laid out and surveyed by T. W. Weightman, surveyor.
“The sale is made ‘per aversionem,’ and all the lands forming part of that property and intended by the parties for that purpose were surveyed, sold, and delivered as such. Forming part of Cypremort plantation, the deed specially mentions sections 44 and 45, the whole of section 32, and the tract or section wherein the canal is located, except the portion reserved which is section 45, there being no other sections in which such a canal is located. Thus carrying out the promise of sale of all swamp lands lying north of Cypremort plantation with the exception of the reservation. The principle laid down in the Civil Code is here applicable:
“ ‘When an owner has alienated one of two estates which belonged to him, and the ownership of any part of it is contested, the limits assigned to it by the vendor at the time of the sale must be consulted. The limits anciently subsisting between the two estates must not be regarded, because the designation which the vendor makes of the metes and bounds forms new limits between the two estates or between the parts of them which he has sold.’ Civ. Code, art. 844.
“It stands to reason that if section 45, save the reservation, had not been sold nor included in this sale nor intended to be sold with and as forming part of Cypremort, it would have been unnecessary to make any and mention any reservation therein. Then why the reservation of seven acres on both sides of the canal if the other portion of the section was not sold and so intended by the parties? The canal is wholly situated in section 45, and the vendor having made the reservation clearly indicates and includes all that section not reserved. Had it been otherwise, it would have been useless and, an idling of time to mention something that meant nothing. It is not to be presumed that' the vendor would have reserved a thing out of something that he did not intend to convey, nor that the contracting parties and the notary executing the deed would have done a vain thing, mentioning something that meant nothing. Therefore the fact of this reservation of each side of the canal, the fact of this canal being the only one situated in these swamps, and the only one running between Grand Cote and Cypremort plantations and located in section 45, and the further fact of the promise of sale calls for such swamp lands as are situated^ north of Cypremort and carried out by the parties, shows most conclusively that the vendor considered section 45 sold, save the reservation as part of Cypremort plantation, and so intended that it be carried out. Especially is this true when the sale recites that the canal and reservation were located by surveyor Weightman, and the map showing same was annexed to the _ deed and formed part thereof. It is further evidenced by the fact that Weeks delivered these lands to_ Burguieres in accordance with the lines drawn" and survey made by said surveyor, and so placed him in full possession, which possession has been peaceful, active, and uninterrupted as owner from the day of the sale to the filing of this suit — a period of 29 years. These lines have been always recognized and acknowledged by Weeks, and on many occasions were pointed out by him and by J. M. Burguieres to diverse parties.
“Now let us see whether these conclusions are correct and in accordance with the intent of the parties as evidenced by their acts and declarations made orally and in writing.
“The deed of Weeks to Burguieres mentions that the former bound himself to acquire certain interest in these lands, which were held by some of his relatives to perfect the title to the latter, notably the heirs of Alfred O. Weeks. This was carried out first by a deed of date June 21, 1879, marked ‘Plaintiff D,’ of the property in controversy and independently described as swamp lands containing 1,350 acres lying between Grand Cote and Cypremort plantations^ with a canal and road running througn it. This canal and road fixed the location of this swamp and the section, and within which area of land section 45 is embraced.
“The title was further perfected by deed marked ‘Defendant E’ from Weeks to Burguieres, wherein were sold one-fourth of one-half of Cypremort and Grand Cote plantations and also of the swamp lands containing 1,350 acres and giving the same description as in prior deed. Burguieres subsequently sold back to Weeks Grand Cote plantation with the adjacent swamp and marsh lands, as per deed marked ‘Defendant F,’ but did not convey to him therein any portion of the 1,350 acres of swamp lands described as hav *335 ing a canal running through it with a road along the margin of the canal. This shows that all of that body of swamp land lying between' Grand Cote and Cypremort plantations was conveyed to Burguieres except the reservation along the banks of the canal. When the sale of Grand Cote plantation by Burguieres to Weeks mentioned adjacent swamps, it no doubt referred to this very reservation which is adjacent to it. In all prior deeds, these swamp lands have been described independently of Grand Cote and Cypremort plantations, and the same are mentioned and given in each of these sales. In the suit of this defendant against Lancon, the petition alleged the defendant company the owner of these swamps, which shows that it claimed title to them at that time. The sale by these plaintiffs to the Myles Salt Company of the salt deposits of Grand Cote Island mentioned the area of the island, and bounded it on the south by the lands of the defendant company, thereby recognizing these swamps as belonging to defendant.
' “The inventory in the succession of J. M. Burguieres described Cypremort plantation and the lands composing it in the same manner as the sale from Weeks to Burguieres. This is also repeated in the inventory made in the estate of Mrs. J. M. Burguieres. The testimony of P. P. Myles, taken under commission, shows the ownership of these swamps in defendant company as claimed by it. The inventory of the estate of William P. Weeks made June 25, 1895, does not mention the land in question, nor are they inventoried. All of the above go to confirm the titles to these lands in the name of the defendant company in conformity with its purchase from the succession of Jules M. Burguieres, and by the latter from William P. Weeks, and show beyond cavil that the plaintiffs have no claim whatever to them. The dividing lines between Cypremort and the reservation were definitely fixed by said surveyor as recited in the deed, and were recognized and respected and possessed up to the same by both parties up to the time of their deaths. This is shown by the evidence of the persons living in that neighborhood and upon these plantations at the time, who are well acquainted with the limits of these two places as taken possession of by the parties, and also by the declarations made by both Weeks and Burguieres, and which were recognized and acquiesced in by them during their lifetime.
“The lines as to the reservation must be fixed by the preponderance of the evidence in the record, and by that which appears most plausible and rational, under the facts presented from the time of the transfer of these lands by Weeks to Burguieres to the present time, due to the fact that the original sale and map are missing, and to the death of Weightman, the surveyor, William P. Weeks, and J. M. Burguieres, who alone could definitely say where these lines were fixed.
“Taking the evidence showing the recognized boundaries or lines between these two tracts of land, and gathering the other parts of the evidence rfelative thereto, convince me that the line as surveyed by Weightman, and delivered by Weeks to Burguieres on the upper side of the canal, was at or near the first bridge leading from Cypremort to Grand Cote Island, and that the line below the canal was at or’ near the second bridge leading from Cypremort to the island. the reservation on the lower side being two acres less in depth than that on the upper side. The correctness of this is shown by the evidence of Viguerie, Rawlings, Murray, Dumesnile, I-Ianf, Combon, Achee, and others, who testify most positively that both Weeks and Burguieres many times pointed out the lines of this reservation at these two points, and that both had acquiesced and acknowledged the same during their lifetime by words, acts, and conduct.
“These facts necessarily place the sawmill site on the lands of the defendant company, and which formed a part of Cypremort plantation as purchased at the time by Burguieres from Weeks. The acts and conduct of both Weeks and Burguieres at the time, as testified to by the aforenamed witnesses, and also Lancon, Desonier, and others, are also to that effect. In supnort of this I find in the. record the undisputed fact that, after Burguieres took possession under the sale, he caused the sawmill, to the knowledge and in the presence of Weeks, to be demolished by his laborers, removed most of the building and all of the machinery, sold a part of the latter to Dumesnile, who in turn sold the engine so purchased to Weeks, who knew at the time that he (Dumesnile) had bought it from Burguieres. Near this mill the land was cultivated by Burguieres and the trees cut for his use. These actions of Weeks and Burguieres corroborate the evidence of these various witnesses as to the true location of these lines and the ownership of section 45, save the reservation whereon the mill was situated.
“The head of the canal, as testified by Hanf and others is shown to have been at a distance of iy2 to 2 acres from the sawmill and towards the island and very near the first bridge. It was impossible for it to have extended into section 32, as represented and shown by the map and proees verbal of survey made by Charles Gutekunst. The building of the railroad track in that section made it impossible to distinguish anything that had the appearance of a canal. Gutekunst’s own testimony shows this to be true when he says that it is hard to say if it was a canal, there being nothing there but railroad pits) and nothing to indicate whether it is a pit or the canal; that he never looked for the lines of the reservation, nor does he know anything about them; and that he was only looking for the canal, and made his map from information furnished him by others.
“This being true, the extension of the canal into section 32 as given and shown by said map and proees verbal of the survey is an error, and cannot be a correct lay of the land and canal.
“The correctness of the opinion reached in this matter is further supported by the actions and conduct of the plaintiffs in the expropriation proceedings against the defendant company for a right of way over its lands, in which they *337 took a prominent part in the interest of the Myles Salt Company, of which they were members. . The deed marked ‘Defendant M,’ purporting to he a donation from the defendant company to the railroad company of a right of way over these very lands as shown by blue prints hereto annexed, shows that plaintiffs had full cognizance of this fact and of the extension of the Cypremort branch railroad to Grand Cote Island. The record again reveals a proposed agreement by the Myles Salt Company, marked ‘Defendant L,’ which no doubt would have been signed by plaintiffs had defendant granted the right of way without suit, wherein it is, in so many words, acknowledged that these lands belonged to the defendant company. The actions of the plaintiffs in this matter are tantamount to an admission of defendant’s title to these lands — the location of the reservation lines — and they cannot now he heard to the contrary. The claim of the defendant to these lands and the lines as established have never been questioned by any one before the filing of this suit, notwithstanding the different acts of ownership and possession by J. M. Burguieres and the defendant.
“Silence reigned supreme for 29 years without a shadow of suspicion having been cast upon the titles as. held by the defendant company and its authors. During all of these years they have been in the quiet, peaceful, and uninterrupted possession of these lands as owners without a murmur of complaint from the lips of any living soul. Plaintiffs have slept for these long years, and at the last hour, after the main actors are gone and the documents that could have told the tale are missing, woke up to make a claim to these lands that has no merit, nor supported by the evidence in the record. To say the least, the demand is a very stale one. For these reasons there is judgment for defendant, rejecting and dismissing plaintiffs’ demand at their cost, and quieting its title and possession to said property.”
Opinion.
On the 21st of May, 1877, William F. AYeeks, by act of that date, before Joseph A. Breaux, notary public, sold to Jules M. Burguieres certain property described in the act of sale as:
“A certain plantation known under the name of ‘Cypremort’ and described by AV. J. McCulloh, surveyor, as follows: ‘Here follows the different tracts described by governmental subdivisions. Among those mentioned subdivisions is stated “All of section 32 containing three hundred and forty-five 05/ioo acres.” Section 45 is not mentioned in this enumeration of subdivisions.’ At the end of the subdivisions mentioned, the act declares ‘all the foregoing situated in T. 14 S., R. 7 East.’”
The act then mentions a number of subdivisions of section 3 and of sections 4 and 2, and then makes the recital:
“The said tracts have been surveyed by Thomas II. Weightman, and the canal hereinafter referred to has been by him correctly located, also the reservations made by the vendor.”
The act then declares:
“This is a sale ‘per aversionem’; the said vendor sells all the lands forming a part of the said Cypremort plantation composing all the lands belonging to him and forming part of said place in sections 20, 21, 28, 29, 44, 31, 32, 33 in T. 14 S., R. 7 East, and whether included in the lines' of said survey or descriptions or not, and whether it contains the said number of acres or not, provided it be in said sections and forms a part of said plantation.
“The said vendor reserves seven acres front above the canal running between Grand Cote and Cypremort plantations and the depth running the entire length of the canal.
“On the lower side of the canal the said vendor reserves seven acres in front on a depth of the entire length of the canal less two acres in depth commencing at the cypress timber.
“The canal and reservation were located as above mentioned, and the map showing the sold location is hereto annexed. The same was made by Mr. Weightman, surveyor. The said vendor also reserves the right of way through the said plantation from the Grand Cote Island to the Cypremort bayou as the road is now laid out. The vendor in selling the said plantation also sells the whole of that portion which belonged at one time to Mrs. Mary C. Conrad, widow Moore. The portion inherited by Mrs. Harriet AYeeks, wife of AVeightman, have been purchased by him. He warrants the title he received from them, and obligates himself within a reasonable time to complete his title to that portion which is claimed by the heirs of H. C. AYeeks. 1-Ie binds himself to protect the said purchaser against all claims on the part of the heirs of said estate and of its creditors, and to make whatever purchase may be necessary to give the purchaser complete title, and institute all legal proceedings may be required to that end. All legal proceedings and attorney fees and acts necessary to obtain a complete title in vendor and now in favor of vendee to be at the expense of vendor. To entirely protect the vendee the notes- hereafter described are made nonnegotiable and subject to this condition.”
The original act of sale before Jos. A. Breaux, notary, was not produced, but a certified copy of the record of that act in the parish of St. Mary on the 29th of May, 1877, was produced. In that certificate the clerk and recorder certified that he had made- a thorough examination of his office, and had failed to find the original act and map, and therefore certified that the same had been *339 lost or destroyed; that the map referred to had never been recorded. The act of sale was preceded by a promise of sale between the same parties by notarial act before the same notary.
An examination of the immense record in this case has not led us to believe that the judgment appealed from is erroneous. On the contrary, we are satisfied that the issues involved herein have been correctly decided. Appellants had to meet and overcome two obstacles in their way to success: First, the well-recognized doctrine, specially applicable to petitory actions, that plaintiff in such an action must depend upon the strength of his own position and not on the weakness of that of defendant; and, second, that a judgment appealed from will be affirmed, unless the appellate court can justifiably declare that the decision is wrong.
The plaintiffs in this case have permitted matters to drift for nearly 30 years, before questioning obviously existing conditions, and waited until by reason of the death of the parties connected with the original facts and by the loss of original documents and maps, and time’s effacing fingers having greatly altered the appearance of natural surrounding objects — doubts may have arisen which would never have existed had matters been brought to a test at the time of their occurrence' — -by the situation as it then was.
Everything in this case leads to the conclusion that neither Hr. Weeks nor Mr. Jules Burguieres was under a misunderstanding as to what had been sold and purchased through the notarial act passed before Joseph A. Breaux, notary, on the 21st day of May, 1877, and under a survey of the lines made at that time by Thomas H. Weightman.
The conduct of the parties to the sale under the survey which had been made was utterly inconsistent with such an existing condition of things, as is contended for by the plaintiffs. The parol testimony taken in the suit was used simply in aid of the positions contended for by the defendant herein.
For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, affirmed.
BREAUX, O. J., recused himself.